UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 10-10263 |
| | ) | Chapter 7 |
| PATRICK WILLIAM BUTTKE | ) | |
| fdba Royal Snow Blowers | ) | |
| SSN/ITIN xxx-xx-4090 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SHANA RUTH BUTTKE | ) | |
| fka Shana Ruth Homrighausen | ) | |
| SSN/ITIN xxx-xx-8349 | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| FORREST C. ALLRED | ) | Adv. No. 11-1015 |
| | ) | |
| Plaintiff | ) | |
| -vs- | ) | DECISION RE: TRUSTEE-PLAINTIFF'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| WILLIAM C. BUTTKE | ) | |
| | ) | |
| Defendant. | ) | |

The matter before the Court is Trustee-Plaintiff Forrest C. Allred's Motion for Summary Judgment regarding a lien claimed by Defendant William C. Buttke. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Court enters these findings and conclusions pursuant to Fed.R.Bankr.P. 7052. For the reasons discussed below, the Court will grant Trustee-Plaintiff Allred's motion.

I.

Patrick William Buttke and Shana Ruth Buttke ("Debtors") filed a chapter 7 petition in bankruptcy on November 23, 2010. On the petition date, Debtors owned a 2004 GMC Envoy ("the vehicle"), which they had purchased the month before using funds supplied by Defendant William C. Buttke ("William"). Both the certificate of title transferring the vehicle from the auto dealer to Debtors ("purchase certificate of title")

and Debtors' application for a new title ("title application") indicate William held a lien on the vehicle. However, Debtors and William did not execute a separate document creating or conveying a security interest in the vehicle to William.

After the petition date, William took possession of the vehicle, and the vehicle is now titled in his name. Trustee-Plaintiff Forrest C. Allred ("Trustee Allred") commenced an adversary proceeding against William. By his complaint (doc. 1), Trustee Allred sought, *inter alia*, a judgment determining William did not have a valid lien on the vehicle and compelling him to turn over the vehicle or its value to the bankruptcy estate. Trustee Allred also asked the Court to order William to pay damages of $250.00 for William's alleged violation of the automatic stay when he took possession of the vehicle after the bankruptcy case was commenced.

William timely answered (doc. 5). He argued he did not violate the automatic stay because the vehicle was not listed on Debtors' schedules and because he had not been given notice of the case. William also claimed he had a valid lien on the vehicle securing the $9,500.00 he had given Debtors to purchase the vehicle.

Trustee Allred moved for summary judgment (doc. 10), asking the Court to declare William did not have a valid lien on the vehicle and William had violated the automatic stay. In his supporting brief (doc. 10-2), Trustee Allred argued that for William to have a perfected security interest in the vehicle on the petition date, S.D.C.L. § 57A-9-203 required him to have either a signed security agreement describing the vehicle or possession of the vehicle. Trustee Allred argued because William had neither, William did not have an enforceable security interest. Trustee Allred further argued, citing several cases, the recent revisions to Article 9 of the Uniform Commercial Code did not alter the requirement of a written security

agreement separate from a notation of the lien on the purchase certificate of title or the title application.

In his response (doc. 12) to Trustee Allred's motion for summary judgment, William claimed two disputed material facts: whether Debtors acknowledged his lien and whether he had notice of the bankruptcy filing. In his Statement of Material Facts Not in Dispute and Identification of Facts in Dispute (doc. 12-1), William listed three material facts in dispute:

> 1. Debtors authenticated a security interest in the vehicle to him;
>
> 2. Under South Dakota law, no specific language is necessary to create a security interest; and
>
> 3. The documents and Debtors' actions regarding the transaction constitute a valid security interest for him in the subject vehicle.

The second and third items, however, are clearly issues of law. The first item is also an issue of law, because William has not identified any document creating or providing for his claimed security interest; he is relying on the "certificate of title transfer documents required by the [state]"[1] and the title application that were authenticated by Debtor Patrick Buttke's signature[2] and that acknowledge a lien held by William, two facts with which Trustee Allred does not quibble. In his brief, William argued S.D.C.L. § 57A-9-203(b) requires the debtor to have "authenticated a security agreement that provides a description of the collateral," in addition to some elements not in dispute. William argued the lien notations on the purchase certificate of title and the title

---

[1] The Court infers William is referring to the purchase certificate of title. It and the other documents related to the vehicle's purchase and titling are attached to William's discovery response (doc. 9).

[2] The signature is illegible, but based on other documents of record, it appears the signature belongs to Debtor Patrick Buttke.

application constitute the necessary authenticated security agreement. As to the relief from stay issue, William argued he cannot be found in violation of the stay because he was not listed on the schedules as a creditor, the vehicle was not listed on the schedules as an asset of the estate, and he "had no notice of the filing."

## II.
## Summary Judgment.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(a). An issue of material fact is *genuine* if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein). A genuine issue of fact is *material* if it might affect the outcome of the case. *Id.* (quotes therein). The matter must be viewed in the light most favorable to the party opposing the motion. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (quoting therein *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587-88 (1986), and citations therein). Where motive and intent are at issue, disposition of the matter by summary judgment may be more difficult. *Cf. Amerinet*, 972 F.2d at 1490.

The movant meets his burden if he shows the record does not contain a genuine issue of material fact and he points out the part of the record that bears out his assertion. *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir. 1988)). No defense to an insufficient showing is required. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346. If the movant meets his burden, however, the nonmovant, to defeat the

motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). The nonmovant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations. *Bell*, 106 F.3d at 263 (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

### III.
### Security Interest in a Motor Vehicle.

In this adversary proceeding, the parties' principal dispute is whether the purchase certificate of title or Debtors' title application, which both acknowledge a lien held by William, constitute a security agreement. We look to the law in South Dakota to determine William's interest in the vehicle. *Moon v. Anderson* (*In re Hixon*), 387 F.3d 695, 700 (8th Cir. 2004) (cited in *Checkett v. Sutton* (*In re Sutton*), 365 B.R. 900, 904 (B.A.P. 8th Cir. 2007)).[3]

---

[3] When considering a state's governing law,

> the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), governs[.] *See FDIC v. Wabick*, 335 F.3d 620, 625 (7th Cir.2003). Under the Erie doctrine, a federal court is bound by the decisions of the state's highest court. *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 934-35 (8th Cir.2007). If the state's highest court has not clearly spoken, we may rely on the decisions of intermediate state courts, unless we are convinced by persuasive data that the highest state court would decide the issue differently. *United Fire & Cas. Ins. Co. v. Garvey*, 328 F.3d 411, 413 (8th Cir.2003) (citing *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)). In attempting to predict state law, a federal court may "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data . . . ." *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir.1980). Our duty is to conscientiously ascertain and apply state law, not to formulate new law based on our own notions of what is the better rule. *See David v.*

An "agreement" is the "bargain of the parties in fact, as found in their language or inferred from other circumstances[.]" S.D.C.L. § 57A-1-201(b)(3). A "security agreement" is "an agreement that creates or provides for a security interest." S.D.C.L. § 57A-9-102(a)(73). A "security interest" is "an interest in personal property . . . which secures payment or performance of an obligation." S.D.C.L. § 57A-1-201(b)(35) (in pertinent part).

For a security agreement to attach to collateral, value must have been given, the debtor must have acquired rights in the collateral or the power to transfer rights in the collateral to the secured party, and the debtor must have "authenticated a security agreement that provides a description of the collateral[.]" S.D.C.L. § 57A-9-203(b)(1), (2), and (3)(A). A creditor holding a security interest in a motor vehicle titled in South Dakota must perfect that interest according to South Dakota law. S.D.C.L. § 57A-9-303(c). In South Dakota, a lien on a motor vehicle is perfected when the lien is noted on the motor vehicle's certificate of title. S.D.C.L. §§ 32-3-39 and 41 and 57A-9-311(a)(2).[4]

No provision of S.D.C.L. chs. 32-3, 57A-1, or 57A-9 unequivocally states a security agreement covering a motor vehicle must exist separate from a lien notation on a certificate of title or on a title application. However, when the provisions of these chapters are considered conjunctively, as William urged the Court to do, the Court concludes that is what the law requires. *City of Rapid City v. Estes*, 805 N.W.2d 714,

---

*Tanksley*, 218 F.3d 928, 930 (8th Cir.2000); *McKenna*, 622 F.2d at 663.

*Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 612 (8th Cir. 2009).

[4] A lien on a motor vehicle may also be perfected by possession in limited circumstances. S.D.C.L. §§ 57A-9-313(b) and 57A-9-316(d).

718-19 (S.D. 2011) (when determining legislative intent, statutes on the same subject matter are taken into consideration and read together) (cites therein).

A security agreement is more than a document that identifies collateral. Instead, three statutory definitions converge to require a bargain of the parties in fact, as found from their language or inferred from other circumstances, that creates or provides for an interest in personal property that secures payment or performance of an obligation. S.D.C.L. §§ 57A-1-201(b)(3) and (35) and 57A-9-102(a)(73). Then, for a security interest to attach to the collateral, the security agreement must identify the collateral. S.D.C.L. § 57A-9-203(b)(3)(A).

Here, the lien notations on the purchase certificate of title and the title application did not *create* or *provide for* a security interest, as required by § 57A-9-102(a)(73) for a security agreement to exist. The notations were only an acknowledgment. While the requirements for creating a security agreement are liberal and no precise words are necessary, a bare-minimum creation or providing for provision is absent. *Sutton*, 365 B.R. at 904-06 (citing *Gasaway v. Erwin* (*In re Shelton*), 472 F.2d 1118, 1120-21 (8th Cir. 1973)) (applying law of Missouri, and noting, "[t]here is nothing in the text or comments of Revised Article 9 that warrants a rejection of the Eighth Circuit's holding in *Shelton* that a notation on an application for title that a creditor is a lien holder is not, by itself, a security agreement"); *In re Rowe,* 369 B.R. 73, 75-77 (Bankr. D. Mass. 2007) (applying law of Massachusetts, equipment lease, certificate of title identifying lienholder, and limited power of attorney did not, together, grant a security interest in truck); and *In re Crandall*, 346 B.R. 220, 222 (Bankr. M.D. Fla. 2006) (applying law of Florida, recordation of lien on an automobile certificate of title does not create a security interest). *See Baldwin v.*

*Castro County Feeders I, Ltd.*, 678 N.W.2d 796, 798 (S.D. 2004) (with limited discussion, "in order to be considered secured, a party must have a security agreement executed by a debtor granting that party a security interest in collateral"). *Compare U.S. v. Missouri Farmers Associates, Inc.*, 580 F.Supp. 35, 36 (E.D. Mo. 1984) (specific conveyance language not required where documents the debtors signed were labeled security agreements, the documents referenced a security agreement several times, and the documents described the collateral in detail), *aff'd*, 764 F.2d 488 (8th Cir. 1985); *In re Schwalb*, 347 B.R. 726, 740-47 (Bankr. D. Nev. 2006) (pawn ticket signed by a debtor was a legally sufficient security agreement where it contained the parties' loan and security bargain). *See* James J. White and Robert S. Summers, *Uniform Commercial Code* § 31–3 (5th ed. 2004) (a security agreement should inform an objective observer the debtor intended to transfer a secured interest in personal property to a creditor) (cited in *Wieberg v. Thompson* (*In re Thompson*), 315 B.R. 94, 103 n.21 (Bankr. W.D. Mo. 2004)). *But see Drown v. Estate of Veronica O'Keefe* (*In re Giaimo*), 440 B.R. 761, 770-71 (B.A.P. 6th Cir. 2010) (relying on Ohio case law and citing several comparable decisions from other jurisdictions).

Apart from the notations on the purchase certificate of title and the title application, the record does not reflect any objective indicia of an actual underlying security agreement between Debtors and William. *Owen v. Lundstrom* (*In re Owen*), 349 B.R. 66, 70-72 (Bankr. D.Idaho 2006) (quoting therein James J. White and Robert S. Summers, *Uniform Commercial Code*, § 31–3 (5th ed. 2002)). William has not advanced any other record, other than those documents, establishing the necessary bargain of the parties.

Finally, the language of several related code sections presuppose a security interest exists separate from the certificate of title *before* the lien is noted on the title. S.D.C.L. § 32-3-38 (authorizes a lienholder to have its lien noted on the vehicle title);[5] S.D.C.L. § 32-3-41 (perfection of an encumbrance on a motor vehicle);[6] S.D.C.L. § 32-3-43 (notation of a lien obtained after the vehicle owner already has title);[7] and

---

[5] S.D.C.L. § 32-3-38 provides:

The holder of a mortgage, trust receipt, conditional sales contract, mechanic's lien, or similar instrument, upon presentation of the certificate of title to the office of the titled owner's county treasurer, together with the fee prescribed by this chapter, may have a notation of the lien made on the certificate of title. The treasurer shall enter the notation and the date thereof over the signature of the officer or deputy and the seal of office. The treasurer on that day shall notify the department. The department shall note the lien on the state's computer system, if the county treasurer has not done so.

[6] S.D.C.L. § 32-3-41 provides, in pertinent part:

A security interest, mechanic's lien, or similar instrument other than a financing statement covering a motor vehicle . . . in the case of the certificate of title, if a notation of same has been made by the secretary, an agent of the secretary, or a county treasurer on the face thereof or if notation of same has been made by the seller, buyer, owner, holder of the instrument, or agent of the secretary on the reverse thereof, shall be valid against the creditors of the debtor, whether armed with process or not, and subsequent purchasers and other lien holders or claimants, but otherwise is not valid against them.

[7] S.D.C.L. § 32-3-43 provides:

The county treasurer, upon receipt of a lien or title instrument duly executed in the manner prescribed by law governing such instruments, together with the fee prescribed for notation thereof which is nonrefundable, shall notify the holder of the certificate of title to deliver to the treasurer, within fifteen days from the date of notice, the certificate of title to permit notation of a lien, and, if necessary, the issuance of a new certificate of title provided in § 32-3-36. After the notation of lien the treasurer shall deliver the certificate of title to the owner or as otherwise directed by the owner. The secured party shall be mailed or delivered notification of the party's security interest as filed and noted on the certificate of title. The holder of a certificate of title who refuses to deliver a certificate of title to the treasurer for the purpose of

S.D.C.L. § 57A-9-102(a)(10) (definition of a "certificate of title").[8]  Here, when the record and these statutes are considered in a light most favorable to William, there is nothing indicating Debtors and William created a specific security interest or similar instrument in William's favor before the lien notations were made on the purchase certificate of title or the subsequent title application.

The Court's conclusion today is supported by the Secretary of Revenue's executive construction[9] of the applicable state law regarding the notation of liens on vehicle titles, where several provisions presuppose a lien instrument exists separate from an application for a certificate of title or from a certificate of title.[10]  *See, e.g.,*

---

> showing the lien on the certificate of title within fifteen days from the date when notified to do so by the treasurer, is liable for damages to the lien holder for the amount of damages the lien holder suffered by reason of the holder of the certificate of title refusing to permit the showing of the lien on the certificate of title.

[8]  S.D.C.L. § 57A-9-102(a)(10) provides:

> "Certificate of title" means a certificate of title with respect to which a statute provides for the security interest in question to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral.

[9]  *See, e.g., State ex rel. Cooperative Wool Growers of South Dakota v. Bushfield*, 8 N.W.2d 1, 3-4 (S.D. 1943) (executive construction is an agency's interpretation of a statute).

[10]  The Secretary of Revenue's interpretation is entitled to great weight since he is expressly given authorization to interpret the statutes so the department may issue rules and instructions as necessary to ensure and obtain uniformity in the administration of S.D.C.L. ch. 32-3, and in particular regarding "[l]ien recording, assignment of liens, execution of cancellation of liens, and delivery of certificate of title."  S.D.C.L. § 32-3-57(5).  *In re State Sales and Use Tax Liability of Pam Oil, Inc.*, 459 N.W.2d 251, 256 (S.D. 1990); and *In re Change of Bed Category of Tieszen Memorial Home, Inc.*, 343 N.W.2d 97, 98 (S.D. 1984).  *See Kasten v. Saint-Gobain Performance Plastics Corp.,* 131 S.Ct. 1325, 1335 (2011) (agency views that are reasonable, consistent with act and consistently held, reflecting careful consideration, may add force to a court's conclusion); *Northwestern Services Corp. v. Si-Tanka Huron University*, 731 N.W.2d 625, 629-30 (S.D. 2007) (deferential treatment may be afforded the regulatory interpretations of government agencies).

S.D.Admin.Rs. 64:28:09:04; 64:28:12:04; 64:28:12:09; 64:28:12:10; 64:28:13:03; and 64:28:13:03.01. Today's conclusion also reflects a uniform treatment of all types of encumbrance holders. *See, e.g.,* S.D.C.L. § 51A-12-16 (creation of a security interest when a bank gives a loan); S.D.C.L. § 54-4-70 ("A title loan shall be evidenced by a written agreement in which a title lender agrees to make a title loan to a debtor and the debtor agrees to give the title lender a security interest in a motor vehicle owned by the debtor . . . ."); and S.D.Admin.R. 64:28:12:09 (junior lienholder must present lien instrument to have lien noted on title).

Because William did not have a security interest that had attached to the vehicle, the vehicle comes into the bankruptcy estate free of any encumbrance held by him.[11] *Giaimo*, 440 B.R. at 765 (before question of perfection is reached, court must first determine whether a security interest attached; if a security interest did not attach, there is no lien to avoid under 11 U.S.C. § 544(a)(1)); *Sutton*, 365 B.R. at 904 (if a creditor's interest in collateral has not attached, the creditor does not have an enforceable interest in that collateral).

IV.
Violation of the Automatic Stay.

William's repeated assertions he had no notice of the bankruptcy case are disingenuous. He never stated he did not have actual knowledge of the bankruptcy case when he took possession of the vehicle, which is the real issue presented, not whether he received a formal written notice from the Bankruptcy Clerk or Debtors

---

[11] William may hold a general unsecured claim for the purchase money he loaned Debtors.

themselves when the petition was filed.[12]  More important, once William had actual knowledge of the case, whenever that was, he was obligated to turn over the vehicle to Trustee Allred or resolve with the trustee whether there was any equity in the vehicle to turn over.[13]  *See* 11 U.S.C. § 542(a).  Whether Debtors scheduled the vehicle as an estate asset is also irrelevant to this discussion; the vehicle was still property of the bankruptcy estate,[14] 11 U.S.C. § 541(a), and the automatic stay nonetheless precluded William from taking possession of it.  11 U.S.C. § 362(a)(3); *LaBarge v. Vierkant* (*In re Vierkant*), 240 B.R. 317, 320-21 (B.A.P. 8th Cir. 1999); *Keen v. Premium Asset Recovery Corp.* (*In re Keen*), 301 B.R. 749, 753 (Bankr. S.D. Fla. 2003) (automatic stay takes effect when the petition is filed, regardless of whether a creditor has knowledge of the case).  William must now return the vehicle and, because he does not have a valid security interest in it, convey title to Trustee Allred for the benefit of the bankruptcy estate.

The Court will enter an order granting Trustee Allred's motion for summary judgment.  The Court, however, will delay entering a judgment until it is advised by Trustee Allred whether he still seeks damages for William's violation of the automatic

---

[12]  William stated in an answer to an interrogatory he first became aware of Debtors' intention to seek bankruptcy protection "around October 1," apparently October 1, 2010.  Moreover, William did not identify lack of actual knowledge of the bankruptcy case as a material fact in dispute, only whether he received notice of the petition filing.

[13]  Were Trustee Allred asking the Court today to determine damages for William's violation of the stay, exactly when William received actual notice of the case would be material.  *See, e.g., Will v. Ford Motor Credit Co.* (*In re Will*), 303 B.R. 357 (Bankr. N.D. Ill. 2003) (technical violation of the automatic stay by a creditor who repossessed an unscheduled vehicle became a willful violation once the creditor had knowledge of the case and refused to turn over the vehicle). However, Trustee Allred did not ask for summary judgment regarding damages.

[14]  Unscheduled property, in fact, remains property of the estate even after the case is closed.  11 U.S.C. § 554(c).

stay, an issue raised in his complaint but not addressed in his summary judgment motion.

Dated: February 17, 2012.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

**NOTICE OF ENTRY**
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota